## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARION FARRIER, RACHEL HARKNESS, LISA NEUMANN, ROSEMARY O'HARA, MICHELE PASCOE, ARIANN TAGLIOLI, CHERYL TERRANO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TEMPUS AI, INC.,<br><br>Defendant. | Case No. 1:26-cv-04246<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Marion Farrier, Rachel Harkness, Lisa Neumann, Rosemary O'Hara, Michele Pascoe, Ariann Taglioli, Cheryl Terrano (collectively, "Plaintiffs"), bring this class action against Defendant Tempus AI, Inc. ("Tempus AI" or "Defendant") in their respective individual capacities and on behalf of all others similarly situated, and allege, upon personal knowledge as to their own actions and their counsels' investigation and belief as to all other matters, as follows:

### INTRODUCTION

1. Plaintiffs bring this class action lawsuit to recover damages, injunctive relief, and other legal and equitable remedies to redress Tempus AI's unauthorized collection and disclosure of Plaintiffs' and the proposed Class's genetic testing results and information derived from genetic testing ("Genetic Information"), which Tempus AI compelled Ambry Genetics Corporation ("Ambry") to illegally transfer to Tempus AI as part of Tempus AI's acquisition of Ambry, without first obtaining Plaintiffs' and the proposed Class's legal authorization, in violation of the Illinois Genetic Information Privacy ("GIPA") and various other state statutes.

2. Founded in 2015, Tempus AI is a healthcare technology company with a mission to "build[] innovative tech solutions oriented around clinical care and research products." It offers

a plethora of artificial intelligence-enabled tools and programs to healthcare providers.[1] Tempus AI also contracts with other pharmaceutical and biotechnology companies to "facilitate discovery, development, and delivery of optimized therapeutic options for patients through distinctive solution sets."[2]

3. Founded in 1999, Ambry Genetics Corporation ("Ambry") is a provider of healthcare services throughout the United States. Through its online services, Ambry offers a comprehensive genetic testing menu of more than 300 tests for screening and diagnosis for inherited and non-inherited diseases, such as cancer, heart disease, neurodevelopmental disorders, and other medical issues.

4. On February 3, 2025, Tempus AI completed its acquisition of Ambry for $600 million. The purpose for such a large-scale acquisition was simple: obtaining Ambry's enormous catalog of Genetic Information as well as its continuing inflex of newly procured Genetic Information, obtained through Ambry's genetic testing services and laboratories. Tempus AI then used this massive and growing trove Genetic Information to feed to its artificial intelligence machine learning model.[3]

5. Tempus AI touted its acquisition of Ambry, stating that the acquisition allows Tempus AI to "broaden[ its] testing portfolio, expand[] [its] disease coverage, and enhance[] the types of products [it] offer[s] to [its] biotech and pharmaceutical partners."[4]

6. As a necessary part of the acquisition, Tempus AI compelled Ambry to disclose its enormous database of Genetic Information, including that of Plaintiffs and Class Members,

---

[1] About Us, TEMPUS, https://www.tempus.com/about-us/tempus-tech/ (last visited Apr. 2, 2026).
[2] Tempus AI, LINKEDIN, https://www.linkedin.com/company/tempusai/ (last visited Apr. 2, 2026).
[3] *Tempus Completes Acquisition of Ambry Genetics*, TEMPUS (Feb. 3, 2025), https://www.tempus.com/news/acquisition-of-ambry-genetics/.
[4] Tempus AI, Tempus Reports Third Quarter 2024 Results and Agreement to Acquire Ambry Genetics (Form 10-Q) (Nov. 4, 2024), https://www.sec.gov/Archives/edgar/data/1717115/000095017024120663/tem-ex99_1.htm.

without the knowledge or written consent of Plaintiffs and Class Members, in violation of state statutes and common law.

7.     Additionally, following the acquisition, Tempus AI shared Plaintiff's and Class Member's Genetic Information, again without their knowledge or written consent, as part of data agreements Tempus AI signed with "over 70 customers, spanning both large and mid-sized pharma, including AstraZeneca, GlaxoSmithKline, Bristol Myers Squibb, Pfizer, Novartis, Merck, Abbvie, Daiichi, Sankyo, Eli Lilly, Boehringer Ingelheim, and biotechnology companies like Incyte, Servier, Aspera Biomedicines, and Whitehawk Therapeutics, as an increasing number of biopharma companies are incorporating Tempus' unique, multimodal dataset into their drug discovery and development efforts." Altogether, these agreements exceeded *$1.1 billion*.[5]

8.     Tempus AI violated GIPA and various other statute statutes by compelling Ambry to illegally disclose Genetic Information to Tempus AI, and its violations continue as a result of entering into agreements with various third-party partners to further illegally disclosure that Genetic Information.

9.     By deceptively causing the illegal disclosure of Plaintiffs' and the proposed Class's Genetic Information, Tempus AI violated and continues to violate GIPA as well as common law and various state consumer protection statutes. Tempus AI has profited enormously from its unlawful conduct. In fact, Tempus AI's reported revenue grew from $145.8 million in Q1 2024 to $255.7 million in Q1 2025—an increase of *57%*.[6]

10.     For these reasons, Plaintiffs bring this action, on behalf of themselves and those similarly situated, to recover damages, injunctive relief, and any other remedies the Court deems

---

[5] *Tempus Achieves Record Total Contract Value Exceeding $1.1 Billion*, TEMPUS (Jan. 11, 2026), https://www.tempus.com/news/tempus-achieves-record-total-contract-value-exceeding-1-1-billion/.
[6] *Q1 2025 Overview*, TEMPUS AI, https://investors.tempus.com/static-files/4862cc66-8cdd-4877-99ab-1f09f4753d39# (last visited Apr. 2, 2026).

just and proper to redress Tempus AI's unauthorized collection, disclosure, and use of their highly sensitive Genetic Information.

## I. JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the proposed class is a citizen of a different state than Defendant, there are more than 100 members of the class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

12. This Court has personal jurisdiction over Defendant Tempus AI because it maintains it conducts substantial business in this District, maintains its principal place of business in this District, and engaged in the conduct at issue herein from and within this District.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Tempus AI maintains its principal place of business in this District, conducts substantial business in this District, and because a substantial part of the events giving rise to this action occurred in this District.

## II. PARTIES

### Plaintiffs

14. Plaintiff Marion Farrier is a resident of New York, New York, whose Genetic Information was improperly disclosed to Tempus AI as part of Tempus AI's acquisition of Ambry. Tempus AI further improperly disclosed Plaintiff Farrier's Genetic Information to various third-party partners.

15. Plaintiff Rachel Harness is a resident of Livonia, Michigan, whose Genetic Information was improperly disclosed to Tempus AI as part of Tempus AI's acquisition of Ambry. Tempus AI further improperly disclosed Plaintiff Farrier's Genetic Information to various third-party partners.

4

16. Plaintiff Lisa Neumann is a resident of Savannah, Georgia, whose Genetic Information was improperly disclosed to Tempus AI as part of Tempus AI's acquisition of Ambry. Tempus AI further improperly disclosed Plaintiff Farrier's Genetic Information to various third-party partners.

17. Plaintiff Rosemary O'Hara is a resident of Fort Lauderdale, Florida, whose Genetic Information was improperly disclosed to Tempus AI as part of Tempus AI's acquisition of Ambry. Tempus AI further improperly disclosed Plaintiff Farrier's Genetic Information to various third-party partners.

18. Plaintiff Michele Pascoe is a resident of Rocklin, California, whose Genetic Information was improperly disclosed to Tempus AI as part of Tempus AI's acquisition of Ambry. Tempus AI further improperly disclosed Plaintiff Farrier's Genetic Information to various third-party partners.

19. Plaintiff Ariann Taglioli is a resident of Morrisonville, Illinois, whose Genetic Information was improperly disclosed to Tempus AI as part of Tempus AI's acquisition of Ambry. Tempus AI further improperly disclosed Plaintiff Farrier's Genetic Information to various third-party partners.

20. Plaintiff Cheryl Terrano is a resident of Buckhannon, West Virginia, whose Genetic Information was improperly disclosed to Tempus AI as part of Tempus AI's acquisition of Ambry. Tempus AI further improperly disclosed Plaintiff Farrier's Genetic Information to various third-party partners.

### Defendant Tempus AI

21. Defendant Tempus AI is a healthcare technology company incorporated in the state of Nevada with its principal place of business at 600 West Chicago Avenue, Suite 510, Chicago

Illinois 60654. Additionally, Defendant Tempus AI devises business decisions and maintains a laboratory in Chicago, Illinois.

## III. FACTUAL BACKGROUND

### A. Genetic data is uniquely sensitive.

22. Genetic data is among the most sensitive categories of personal data. It is inherently unique to each individual, immutable, and predictive of present and future health conditions.

23. Unlike other identifiers, genetic data cannot be changed if exposed, and it can reveal information not only about an individual but also about that individual's biological relatives.

24. Because genetic data may be used to infer disease risk, ancestry, familial relationships, and other deeply personal attributes, its exposure creates acute and continuing risks to privacy, discrimination, and even personal security.

25. Genetic data is considered so sensitive that, in 2008, Congress passed the Genetic Information Nondiscrimination Act to protect individuals from discrimination within the contexts of obtaining employment and health insurance. *See* 42 U.S.C. § 2000ff, *et seq.*

26. The sensitivity of genetic data arises from several interrelated factors, including the following:

   a. Genetic data can disclose actual or probable health traits and predispositions that individuals may wish to keep private from employers, insurers, data brokers, and the public;

   b. Genetic data can enable discrimination in employment, housing, insurance underwriting, education, lending, and other critical contexts;

   c. Genetic data is durable and persistent across time, making any breach or misuse effectively irreversible and capable of causing harm well into the future;

d. Genetic profiles can be linked or re-identified through reference databases, allowing adversaries to connect de-identified genetic records to named individuals and their families; and

e. Genetic data can facilitate targeted scams, identity theft, extortion, stalking, and other personal security threats by exposing intimate family relationships and vulnerabilities.

27. Recognizing these risks, numerous states have enacted statutes specifically tailored to protect genetic data, regulate its collection, use, and disclosure, and provide individuals with enforceable rights and remedies. These laws reflect a clear legislative consensus that genetic data warrants heightened safeguards beyond general privacy protections.

28. In 2023 alone, four states—Montana, Tennessee, Texas, and Virginia—enacted new genetic privacy laws specifically regulating direct-to-consumer genetic testing companies and their handling of genetic data, joining the likes of Arizona, California, Kentucky, Maryland, Utah, and Wyoming.[7]

29. These statutes build on earlier efforts to protect genetic data, including Illinois' Genetic Information Privacy Act, enacted in 2008, which provides in part that "genetic testing and information derived from genetic testing is confidential and privileged and may be released only to the individual tested and to persons specifically authorized, in writing …, by that individual to receive the information." 410 ILCS 513/15(a).

---

[7] *See* Niharika Vattikonda et al., *The DNA of Genetic Privacy Legislation: Montana, Tennessee, Texas, and Virginia Enter 2024 with New Genetic Privacy Laws Incorporating FPF's Best Practices*, FUTURE OF PRIVACY FORUM (Mar. 7, 2024), https://fpf.org/blog/the-dna-of-genetic-privacy-legislation-montana-tennessee-texas-and-virginia-enter-2024-with-new-genetic-privacy-laws-incorporating-fpfs-best-practices/.

30. Collectively, these statutes reflect a clear public policy judgment that genetic data is uniquely sensitive and requires clear and robust protections and procedures to guard against the improper collection, use, and transfer of such data.

31. As alleged herein, Tempus AI violated GIPA, common law, and various other state consumer protection statutes when it (1) compelled Ambry to illegally transfer thousands of individuals' Genetic Information to itself without written consent as part of its acquisition of Ambry; and (2) subsequently disclosed that same Genetic Information to third-party partners through a series of data sharing agreements, again without written consent.

**B.      Ambry collects personally identifying Genetic Information from Plaintiff and Class Members.**

32. Ambry was founded in 1999 as a basic diagnostic laboratory and has grown over the years to a massive state-of-the-art genetic testing behemoth. The company has performed more than 1 million genetic tests and is an in-network provider for almost 97% of patients in the U.S. who have public or private health insurance. Ambry's "highly-automated" lab operates 24/7 and performs "DNA fingerprinting of each specimen before and after testing." The comprehensive genetic testing menu of more than 300 tests for screening and diagnosis offered by Ambry includes services for oncology, cardiology, neurology, and exome and general genetics.

33. Patients and healthcare professionals can order tests directly though Ambry's online portal and have the results sent to the doctor or directly to the patient.

34. Ambry has procured its enormous amount of genetic data through offering at-home genetic testing kits and laboratories. Ambry customers receive at-home genetic testing kits which allow for the submission of the blood or saliva samples. Such testing may be done through a customer's healthcare provider.

35. Recognizing the enormous value of Ambry's vast and continually growing cache of Genetic Information, Tempus AI completed its acquisition of Ambry in February 2025 for *$600 million* ($375 million in cash and $225 million in shares at closing).

**C. Tempus AI compelled Ambry to disclose Plaintiff's and Class Members' Genetic Information without required authorization.**

36. Defendant Tempus AI offers numerous artificial intelligence-driven technologies to healthcare providers, with numerous product offerings like "Hub," "One," "Now," "Pixel," and "Lens." These offerings that provide services like "platforms for ordering, managing, and receiving Tempus tests and patient results"; "AI-enabled assistant for providers and researchers that enables rapid insights"; "AI-enabled insights from medical images"; and "AI-enabled personal health concierge designed for patients and caregivers managing serious or chronic conditions."[8]

37. In order for Tempus AI's artificial intelligence algorithms to "learn," they must be "trained on broad and diverse datasets, enabling them to generalize across a wide range of downstream tasks."[9]

38. Central to Tempus AI's acquisition of Ambry was Ambry's vast and continually growing cache of Genetic Information, which represented a windfall of information which Tempus AI could feed to its AI-learning algorithms.

39. According to Eric Lefkofsky, Tempus AI's founder and CEO, the acquisition of Ambry "compliments [Tempus AI]'s strategy of leveraging diagnostics and data to drive innovation, further strengthening [Tempus AI]'s ability to deliver cutting-edge solutions to clinicians, patients, and life sciences companies."[10]

---

[8] Tempus Technology, TEMPUS, https://www.tempus.com/about-us/tempus-tech/ (last visited Apr. 3, 2026).
[9] Mohan Timilsina et al., *Harmonizing foundation models in healthcare: A comprehensive survey of their roles, relationships, and impact in artificial intelligence's advancing terrain*, 189 COMPUTS. IN BIOLOGY & MED. (May 2025), at 3.
[10] *Tempus Completes Acquisition of Ambry Genetics*, TEMPUS (Feb. 3, 2025), https://www.tempus.com/news/acquisition-of-ambry-genetics/.

40.     Thus, as part of its acquisition of Ambry, Tempus AI compelled Ambry to disclose its enormous and continually growing cache of Genetic Information, including the Genetic Information of Plaintiffs' and Class Members, to Tempus AI, in order to for Tempus AI to further train its artificial intelligence algorithms. Tempus AI compelled this disclosure of highly sensitive Genetic Information without having bothered to obtain the written consent of Plaintiffs and Class Members, in direct violation of GIPA.

41.     Tempus AI now maintains possession of Plaintiffs' and Class Members' Genetic Information and has incorporated it into its own data sets. Tempus AI admits as much in its February 24, 2025 investor presentation, where it touts that "Tempus offers germline sequency (xG) for inherited risk, using Ambry as its supplier[,]" "Ambry generates vast amounts of data across ~400k patients it sequences each year[, and] Tempus can leverage this data to augment its current data offering[,]" and "Ambry's product line allows Tempus to immediately expand into new categories."[11]

42.     Thus, Tempus AI has leveraged Plaintiffs' and Class Members' illegally transferred Genetic Information into new and expanding financial opportunities, all without having obtained Plaintiffs' and Class Members' required authorization.

**D.      Tempus AI disclosed the illegally acquired Genetic Information to third parties without required authorization.**

43.     After Tempus AI compelled Ambry to illegal transfer Plaintiffs' and Class Members' Genetic Information as part of its acquisition of Ambry, Tempus AI further leveraged that Genetic Information via additional illegal transfers for additional profit.

---

[11] *Tempus AI, Inc. Investor Presentation Q4 2024*, TEMPUS (Feb. 24, 2025), https://investors.tempus.com/static-files/7785f3fe-ccf4-4f86-935a-ad25a4d7f6e2.

44. Again, Tempus AI made no secret of this, touting its $1.1 billion total contract value in 2025.[12]

45. Specifically, in 2025, Tempus AI "signed data agreements with over 70 customers[.]"[13] The entities Tempus AI signed these data agreements with represent "both large and mid-sized pharma," including behemoths like AstraZeneca, Bristol Myers Squibb, Pfizer, Merck, and Eli Lilly, as well as "biotechs" like Incyte, Servier, Aspera Biomedicines, and Whitehawk Therapeutics. Tempus AI boasts that "an increasing number of biopharma companies are incorporating Tempus' unique, multimodal dataset into their drug discovery and development efforts."[14]

46. Thus, Tempus AI's additional illegal transfers of Plaintiffs' and Class Members' sensitive Genetic Information represented a massive boom in business for Tempus AI. As its CFO, Jim Rogers, put it, "2025 was a record year for [Tempus AI's] Data and applications business[,]" elaborating that "[Tempus AI's] engagement with life sciences companies has never been stronger, and [Tempus AI's] data business has never been better positioned, giving [Tempus AI] tremendous visibility to continued growth in 2026 and beyond."[15]

47. Indeed, in its summary for 2025, Tempus AI reported an *83.4%* year-over-year increase in revenue, and its gross profit showed *109.4%* growth year-over-year.[16] Moreover, Tempus AI expects ~25% growth in revenue in 2026.[17]

---

[12] *Tempus Achieves Record Total Contract Value Exceeding $1.1 Billion*, TEMPUS (Jan. 11, 2026), https://www.tempus.com/news/tempus-achieves-record-total-contract-value-exceeding-1-1-billion/.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Tempus Reports Fourth Quarter and Full Year 2025 Results*, TEMPUS (Feb. 24, 2026), https://www.tempus.com/news/pr/tempus-reports-fourth-quarter-and-full-year-2025-results/.
[17] *Id.*

48. Tempus AI's record-breaking success can be fairly traced to its illegal acquisition and subsequent disclosure of Plaintiffs' and Class Members' sensitive Genetic Information to its third-party partners, in violation of GIPA.

**E.      Tempus AI and Ambry misled the public when they claimed to only disclose "de-identified" Genetic Information.**

49. Both Tempus AI and Ambry claim to disclose only "de-identified" Genetic Information. These carefully crafted public statements, however, do not withstand scrutiny.[18]

50. Despite their public statements to the contrary, Ambry and Tempus AI do not, in fact, only disclose "de-identified" Genetic Information.

51. In 2020, unauthorized individuals breached Ambry, obtaining the protected health information of 232,772 patients. Ambry was aware of the identities of the affected patients because it informed its customers that the breach involved "[e]mails and attachments contain[ing] sensitive patient data such as names, diagnoses, and other medical information, with a subset of patients also having their Social Security numbers exposed."[19] Thus, Ambry linked the health information it held with identifiable customer data.

52. Tempus AI's public claims that the genetic data it shares with third parties is "structured and de-identified, prior to commercialization" are similarly contradictory and unconvincing.[20] For example, Tempus AI tells third parties licenses that its services would enable them to "[i]dentify[] patients and contextualize[] where they are in the care journey relative to

---

[18] Tempus AI Inc., Prospectus Supplement (Aug. 27, 2025), https://www.sec.gov/Archives/edgar/data/1717115/000119312525189854/d14762d424b7.htm (last visited Feb. 12, 2026); Ambry Genetics Corporation Notice of Privacy Practices, AMBRY GENETICS (Mar. 19, 2025), https://www.ambrygen.com/legal/notice-of-privacy-practices (last visited Feb. 12, 2026).

[19] Steve Adler, *Ambry Genetics Settles Class Action Data Breach Lawsuit for $12.25 Million*, THE HIPAA J. (Sept. 15, 2022), https://www.hipaajournal.com/ambry-genetics-settles-class-action-data-breach-lawsuit-for-12-25-million/.

[20] Tempus AI Inc., Prospectus Supplement (Aug. 27, 2025), https://www.sec.gov/Archives/edgar/data/1717115/000119312525189854/d14762d424b7.htm.

clinical guidelines."[21] Additionally, Tempus AI promotes delivering "precision medicine to improve patient outcomes" by "unraveling disease complexity from a complete, unified picture of the patient"—which would necessarily require the identification of a unique patient.[22]

53.     Despite the assertions of Ambry and Tempus AI, genetic data cannot be de-identified because such data serves as an inherently unique biomarker.[23] GIPA defines "[d]e-identified information" as "health information that is not individually identifiable as described under HIPAA, as specified in 45 CFR 164.514(b)." Under HIPAA, health information can only be de-identified by "1) a formal determination by a qualified expert; or 2) the removal of specified individual identifiers as well as absence of actual knowledge by the covered entity that the remaining information could be used alone or in combination with other information to identify the individual."[24] *See* 45 CFR 164.514(b). One such identifier is "biometric identifiers." 45 CFR 164.514(b)(2)(i)(P).

54.     Genetic data, like DNA, is inherently identifiable. "DNA …. [is] considered unique to the individual data subject, and regardless of whether the labels are stripped away, they still contain identifying information.[25] Indeed, "DNA is inherently unique to the individual …. Even without a name or phenotype linkage, DNA includes many clues for narrowing the identity

---

[21] Bringing data and AI to healthcare, TEMPUS, https://www.tempus.com/about-us/tempus-tech/ (last visited Apr. 5, 2026).

[22] *Tempus AI, Inc. Investor Presentation Q4 2024*, TEMPUS (Feb. 24, 2025), https://investors.tempus.com/static-files/7785f3fe-ccf4-4f86-935a-ad25a4d7f6e2.

[23] *See* Policy Statement of the Federal Trade Commission on Biometric Information and Section 5 of the Federal Trade Commission Act, FED. TRADE COMM'N, https://www.ftc.gov/system/files/ftc_gov/pdf/p225402biometricpolicystatement.pdf (noting "[b]iometric information includes … genetics.") (last visited Apr. 5, 2026).

[24] Guidance Regarding Methods for De-identification of Protected Health Information in Accordance with the Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule, U.S. DEP'T HEALTH & HUM. SERVS., https://www.hhs.gov/hipaa/for-professionals/special-topics/de-identification/index.html (last visited Apr. 5, 2026).

[25] *See* Justin Banda, *Inherently identifiable: Is it possible to anonymize health and genetic data?*, THE IAPP (Nov. 13, 2019), https://iapp.org/news/a/inherently-identifiable-is-it-possible-to-anonymize-health-and-genetic-data.

possibilities—and it can be obtained from objects as ubiquitous as discarded coffee cups."[26] According to The Petrie-Flom Center at Harvard Law School, even purportedly "de-identified" genomic data can be "re-identified."[27]

### F.  Plaintiffs' experiences and injuries.

*Marion Farrier*

55.     In or around August 2018, Plaintiff Farrier had genetic testing performed by Ambry in New York, New York. Plaintiff Farrier authorized the genetic counselor to send her confidential and sensitive private Genetic Information to Ambry in connection with his genetic testing and expected that this information would be kept confidential in accordance with applicable law.

56.     Unbeknownst to Plaintiff Farrier, Tempus AI compelled Ambry's disclosure of its cache of identifiable Genetic Information to Tempus AI, including that of Plaintiff Farrier.

57.     Plaintiff Farrier did not consent, agree, or grant permission to Ambry to disclosure her sensitive Genetic Information to Tempus AI or any other third party; nor did she consent, agree, or give permission to Tempus AI to commercialize or disclose her Genetic Information.

58.     As a direct and proximate result of the illegal transfer, Plaintiff Farrier suffered loss of her privacy and property interest in her sensitive Genetic Information. Moreover, she faces a continuing injury because Tempus AI continues to use her Genetic Information in its artificial intelligence algorithms. Plaintiff Farrier faces the ongoing risk that Tempus AI or other third parties will further disseminate her Genetic Information, exposing her to additional risk.

---

[26] GENOMICS-ENABLED LEARNING HEALTH CARE SYSTEMS: GATHERING AND USING GENOMIC INFORMATION TO IMPROVE PATIENT CARE AND RESEARCH: WORKSHOP SUMMARY (Bd. Health Sci. Pol'y, Inst. of Med. 2015), https://www.nationalacademies.org/read/21707/chapter/4#21 (last visited Apr. 5, 2026).

[27] Elizabeth Pike et al., *Privacy and Progress and the Deidentification of Whole Genome Sequence Data*, HEALTH L. POL'Y, BIOTECH. & BIOETHICS AT HARVARD L. SCH. (May 10, 2013), https://petrieflom.law.harvard.edu/2013/05/10/privacy-and-progress-and-the-deidentification-of-whole-genome-sequence-data/.

59. Tempus AI deprived Plaintiff Farrier of any opportunity to consent to or contest the illegal transfer and subsequent commercialization of her sensitive Genetic Information.

### Rachel Harkness

60. In or around November 2017, Plaintiff Harkness had genetic testing performed by Ambry in Livonia, Michigan. Plaintiff Harkness authorized the genetic counselor to send her confidential and sensitive private Genetic Information to Ambry in connection with his genetic testing and expected that this information would be kept confidential in accordance with applicable law.

61. Unbeknownst to Plaintiff Harkness, Tempus AI compelled Ambry's disclosure of its cache of identifiable Genetic Information to Tempus AI, including that of Plaintiff Harkness.

62. Plaintiff Harkness did not consent, agree, or grant permission to Ambry to disclosure her sensitive Genetic Information to Tempus AI or any other third party; nor did she consent, agree, or give permission to Tempus AI to commercialize or disclose her Genetic Information.

63. As a direct and proximate result of the illegal transfer, Plaintiff Harkness suffered loss of her privacy and property interest in her sensitive Genetic Information. Moreover, she faces a continuing injury because Tempus AI continues to use her Genetic Information in its artificial intelligence algorithms. Plaintiff Harkness faces the ongoing risk that Tempus AI or other third parties will further disseminate her Genetic Information, exposing her to additional risk.

64. Tempus AI deprived Plaintiff Harkness of any opportunity to consent to or contest the illegal transfer and subsequent commercialization of her sensitive Genetic Information.

### Lisa Neumann

65. In or around October 2018, Plaintiff Neumann had genetic testing performed by Ambry in New York. Plaintiff Neumann authorized the genetic counselor to send her confidential

and sensitive private Genetic Information to Ambry in connection with his genetic testing and expected that this information would be kept confidential in accordance with applicable law.

66.     Unbeknownst to Plaintiff Neumann, Tempus AI compelled Ambry's disclosure of its cache of identifiable Genetic Information to Tempus AI, including that of Plaintiff Neumann.

67.     Plaintiff Neumann did not consent, agree, or grant permission to Ambry to disclosure her sensitive Genetic Information to Tempus AI or any other third party; nor did she consent, agree, or give permission to Tempus AI to commercialize or disclose her Genetic Information.

68.     As a direct and proximate result of the illegal transfer, Plaintiff Neumann suffered loss of her privacy and property interest in her sensitive Genetic Information. Moreover, she faces a continuing injury because Tempus AI continues to use her Genetic Information in its artificial intelligence algorithms. Plaintiff Neumann faces the ongoing risk that Tempus AI or other third parties will further disseminate her Genetic Information, exposing her to additional risk.

69.     Tempus AI deprived Plaintiff Neumann of any opportunity to consent to or contest the illegal transfer and subsequent commercialization of her sensitive Genetic Information.

### *Rosemary O'Hara*

70.     In or around June 2019, Plaintiff O'Hara had genetic testing performed by Ambry. Plaintiff O'Hara authorized the genetic counselor to send her confidential and sensitive private Genetic Information to Ambry in connection with his genetic testing and expected that this information would be kept confidential in accordance with applicable law.

71.     Unbeknownst to Plaintiff O'Hara, Tempus AI compelled Ambry's disclosure of its cache of identifiable Genetic Information to Tempus AI, including that of Plaintiff O'Hara.

16

72.     Plaintiff O'Hara did not consent, agree, or grant permission to Ambry to disclosure her sensitive Genetic Information to Tempus AI or any other third party; nor did she consent, agree, or give permission to Tempus AI to commercialize or disclose her Genetic Information.

73.     As a direct and proximate result of the illegal transfer, Plaintiff O'Hara suffered loss of her privacy and property interest in her sensitive Genetic Information. Moreover, she faces a continuing injury because Tempus AI continues to use her Genetic Information in its artificial intelligence algorithms. Plaintiff O'Hara faces the ongoing risk that Tempus AI or other third parties will further disseminate her Genetic Information, exposing her to additional risk.

74.     Tempus AI deprived Plaintiff O'Hara of any opportunity to consent to or contest the illegal transfer and subsequent commercialization of her sensitive Genetic Information.

### Michele Pascoe

75.     In or around late 2019, Plaintiff Pascoe had genetic testing performed by Ambry in Los Angeles, California. Plaintiff Pascoe authorized the genetic counselor to send her confidential and sensitive private Genetic Information to Ambry in connection with his genetic testing and expected that this information would be kept confidential in accordance with applicable law.

76.     Unbeknownst to Plaintiff Pascoe, Tempus AI compelled Ambry's disclosure of its cache of identifiable Genetic Information to Tempus AI, including that of Plaintiff Pascoe.

77.     Plaintiff Pascoe did not consent, agree, or grant permission to Ambry to disclosure her sensitive Genetic Information to Tempus AI or any other third party; nor did she consent, agree, or give permission to Tempus AI to commercialize or disclose her Genetic Information.

78.     As a direct and proximate result of the illegal transfer, Plaintiff Pascoe suffered loss of her privacy and property interest in her sensitive Genetic Information. Moreover, she faces a continuing injury because Tempus AI continues to use her Genetic Information in its artificial

intelligence algorithms. Plaintiff Pascoe faces the ongoing risk that Tempus AI or other third parties will further disseminate her Genetic Information, exposing her to additional risk.

79. Tempus AI deprived Plaintiff Pascoe of any opportunity to consent to or contest the illegal transfer and subsequent commercialization of her sensitive Genetic Information.

### *Ariann Taglioli*

80. Plaintiff Taglioli had genetic testing performed by Ambry. Plaintiff Taglioli authorized the genetic counselor to send her confidential and sensitive private Genetic Information to Ambry in connection with his genetic testing and expected that this information would be kept confidential in accordance with applicable law.

81. Unbeknownst to Plaintiff Taglioli, Tempus AI compelled Ambry's disclosure of its cache of identifiable Genetic Information to Tempus AI, including that of Plaintiff Taglioli.

82. Plaintiff Taglioli did not consent, agree, or grant permission to Ambry to disclosure her sensitive Genetic Information to Tempus AI or any other third party; nor did she consent, agree, or give permission to Tempus AI to commercialize or disclose her Genetic Information.

83. As a direct and proximate result of the illegal transfer, Plaintiff Taglioli suffered loss of her privacy and property interest in her sensitive Genetic Information. Moreover, she faces a continuing injury because Tempus AI continues to use her Genetic Information in its artificial intelligence algorithms. Plaintiff Taglioli faces the ongoing risk that Tempus AI or other third parties will further disseminate her Genetic Information, exposing her to additional risk.

84. Tempus AI deprived Plaintiff Taglioli of any opportunity to consent to or contest the illegal transfer and subsequent commercialization of her sensitive Genetic Information.

### *Cheryl Terrano*

85. In or around December 2017, Plaintiff Terrano had genetic testing performed by Ambry. Plaintiff Terrano authorized the genetic counselor to send her confidential and sensitive

private Genetic Information to Ambry in connection with his genetic testing and expected that this information would be kept confidential in accordance with applicable law.

86. Unbeknownst to Plaintiff Terrano, Tempus AI compelled Ambry's disclosure of its cache of identifiable Genetic Information to Tempus AI, including that of Plaintiff Terrano.

87. Plaintiff Terrano did not consent, agree, or grant permission to Ambry to disclosure her sensitive Genetic Information to Tempus AI or any other third party; nor did she consent, agree, or give permission to Tempus AI to commercialize or disclose her Genetic Information

88. As a direct and proximate result of the illegal transfer, Plaintiff Terrano suffered loss of her privacy and property interest in her sensitive Genetic Information. Moreover, she faces a continuing injury because Tempus AI continues to use her Genetic Information in its artificial intelligence algorithms. Plaintiff Terrano faces the ongoing risk that Tempus AI or other third parties will further disseminate her Genetic Information, exposing her to additional risk

89. Tempus AI deprived Plaintiff Terrano of any opportunity to consent to or contest the illegal transfer and subsequent commercialization of her sensitive Genetic Information.

## IV. CLASS ALLEGATIONS

90. Plaintiffs bring this class action on behalf of themselves and all others similarly situated pursuant to Rules 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure. Plaintiffs seek to represent the following Class and Subclass (collectively, the "Classes"):

91. **Nationwide Class**: All individuals whose genetic testing information, including information derived from genetic testing, was transferred to Tempus AI by Ambry, or whose information was subsequently disclosed by Tempus AI to third parties.

92. **California Subclass**: All California residents whose genetic testing information, including information derived from genetic testing, was transferred to Tempus AI by Ambry, or whose information was subsequently disclosed by Tempus AI to third parties.

93. **Florida Subclass**: All Florida residents whose genetic testing information, including information derived from genetic testing, was transferred to Tempus AI by Ambry, or whose information was subsequently disclosed by Tempus AI to third parties.

94. **Georgia Subclass**: All Georgia residents whose genetic testing information, including information derived from genetic testing, was transferred to Tempus AI by Ambry, or whose information was subsequently disclosed by Tempus AI to third parties.

95. **Illinois Subclass**: All Illinois residents whose genetic testing information, including information derived from genetic testing, was transferred to Tempus AI by Ambry or whose information was subsequently disclosed by Tempus AI to third parties.

96. **Michigan Subclass**: All Michigan residents whose genetic testing information, including information derived from genetic testing, was transferred to Tempus AI by Ambry, or whose information was subsequently disclosed by Tempus AI to third parties.

97. **New York Subclass**: All New York residents whose genetic testing information, including information derived from genetic testing, was transferred to Tempus AI by Ambry and whose information was subsequently disclosed by Tempus AI to third parties.

98. **West Virginia**: All West Virginia residents whose genetic testing information, including information derived from genetic testing, was transferred to Tempus AI by Ambry, or whose information was subsequently disclosed by Tempus AI to third parties.

99. Excluded from the Class are the following individuals and/or entities: Tempus AI and Tempus AI's parents, subsidiaries, affiliates, officers, and directors, current or former employees, and any entity in which Tempus AI have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments,

agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

100.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

101.     Numerosity, Fed R. Civ. P. 23(a)(1): The Nationwide Class and State Subclasses (the "Classes") are so numerous that joinder of all members is impracticable. At the time of Tempus AI compelled the transfer of Ambry's cache of Genetic Information, Plaintiffs believe Ambry possessed the Genetic Information of hundreds of thousands of individuals, and believes the Classes are identifiable within Tempus AI's and/or Ambry's records.

102.     Commonality, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include, but are not limited to:

a.   whether Tempus AI compelled disclosure of Plaintiff's and the proposed Classes' Genetic Information without written authorization;

b.   whether Tempus AI disclosed Plaintiff's and the proposed Classes' Genetic Information without written authorization;

c.   whether Tempus AI's conduct is subject to GIPA;

d.   whether Tempus AI properly informed Plaintiff and members of the proposed Classes that it obtained their Genetic Information;

e.   whether Tempus AI obtained a written release (as defined in 410 ILCS 513/15) to obtain Plaintiff's and members of the proposed Classes' Genetic Information;

f.   whether Tempus AI's violations of GIPA were committed intentionally, recklessly, or negligently; and

21

g.  whether Tempus AI's conduct violated the CMIA;

h.  whether Tempus AI obtained a written release (as stipulated in Cal. Civ. Code §
56.11) to disclose Plaintiffs' and Class Members' private health information;

i.  whether Tempus AI is a healthcare provider under Cal. Civ. Code § 56.06(a);

j.  whether Plaintiffs and Class Members are "patients" under Cal. Civ. Code §
56.05(k);

k.  whether Plaintiffs and Class Members were deceived and/or treated unfairly by
Tempus AI; and

l.  whether Plaintiff and the proposed Class are entitled to damages and/or other
equitable relief.

103.  Typicality, Fed. R. Civ. P. 23(a)(3): Plaintiffs' claims are typical of those of other Class Members because all had their genetic testing information or information derived from genetic testing transferred to or by Defendant Tempus AI without authorization.

104.  Adequacy, Fed. R. Civ. P. 23(a)(4): Plaintiffs will fairly and adequately represent and protect the interests of the Class Members in that they have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.

105.  Superiority and Manageability, Fed. R. Civ. P. 23(b)(3): The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the

22

controversy alleged herein; it will permit a large number of class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

## V.   CAUSES OF ACTION

<u>COUNT I</u>
**Violation of the Illinois Genetic Information Privacy Act ("GIPA")**
**410 Ill. Comp. Stat. Ann. 513/1, *et seq.***
**(On behalf of Plaintiff Taglioli, the Nationwide Class, and the Illinois Subclass)**

106.   Illinois Plaintiff Taglioli ("Plaintiff" for purposes of this Count) restates and realleges the allegations set forth in ¶¶ 1-105 as if fully set forth herein.

107.   As a public corporation, Tempus AI qualifies as a "person" under GIPA. *See* 410 ILCS 513/10.

108.   Section 15 of GIPA mandates that "genetic testing and information derived from genetic testing is confidential and privileged and may be released only to the individual tested and to persons specifically authorized, in writing in accordance with Section 30, by that individual to receive the information." *See* 410 ILCS 513/15(a).

109.   Section 30 of GIPA stipulates that "[n]o person may disclose or be compelled to disclose the identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test, except to" (i) the subject of the test or the subject's legally authorized representative, (ii) any person designated in a specific

written legally effective authorization for release of the test results and certain other persons not relevant here. *See* 410 ILCS 513/30.

110. Section 35 of GIPA bars any "person to whom the results of a test have been disclosed [from disclosing] the test results to another person except as authorized under this Act." *See* 410 ILCS 513/35.

111. Tempus AI violated Sections 15, 30, and 35 of GIPA by failing to keep Plaintiff's and the Classes' Genetic Information confidential without express authorization. Tempus AI also violated Section 30 of GIPA, which prohibits compelling the disclosure of Genetic Information.

112. Plaintiff and the Classes are individuals who submitted Genetic Information to Ambry. When it acquired Ambry, Tempus AI compelled the disclosure and obtained the Genetic Information of Plaintiff and the Classes, as previously detailed. Tempus AI also breached GIPA by sharing the identities and/or Genetic Information of Plaintiff and the Classes with third parties. Tempus AI did not secure written consent from the Plaintiff and the Classes to compel the disclosure of or further disclose their Genetic Information, as mandated by GIPA.

113. The violations of GIPA by Tempus AI, as described here, were knowing and willful or, at the very least, showed reckless disregard for GIPA's statutory requirements. Alternatively, Tempus AI negligently failed to adhere to GIPA.

114. On behalf of herself and the proposed Classes, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Classes by requiring Tempus AI to comply with GIPA's requirements; (2) statutory damages of $15,000 for each intentional and/or reckless violation of GIPA pursuant to 410 ILCS 513/40(a)(2) or, in the alternative, statutory damages of $2,500 for each negligent violation of GIPA pursuant to 410

ILCS 513/40(a)(1); and (3) reasonable attorneys' fees and costs and other litigation expenses pursuant to 410 ILCS 513/40(a)(3).

## COUNT II
### Violation of the Illinois Personal Information Protection Act
### 815 Ill. Comp. Stat. Ann. 513/10(A), *et seq.*
### (On behalf of Plaintiff Taglioli and the Illinois Subclass)

115. Illinois Plaintiff Taglioli ("Plaintiff" for purposes of this Count) restates and realleges the allegations set forth in ¶¶ 1-105 as if fully set forth herein.

116. As an entity that handles, collects, disseminates, or otherwise deals with nonpublic personal information, Tempus AI is a "Data Collector" as defined by 815 Ill. Comp. Stat. § 530/5.

117. Plaintiff and the Illinois Subclass's Genetic Information is Personal Information as defined by 815 Ill. Comp. Stat. § 530/5.

118. As a Data Collector, Tempus AI was required to notify Plaintiff and the Illinois Subclass of the breach of the confidentiality or security of their Genetic Information in the most expedient time possible and without unreasonable delay.

119. By failing to disclose the unauthorized transfer of their Genetic Information, Tempus AI violated 815 Ill. Comp. Stat. § 530/10(a).

120. Tempus AI's decisions to fail to timely disclose the unauthorized transfer of Plaintiff's and the Illinois Subclass's Genetic Information was knowing and willful.

121. Under 815 Ill. Comp. Stat. § 530/20, a violation of 815 Ill. Comp. Stat. § 530/10(a) constitutes an unlawful practice under the Illinois Consumer Fraud and Deceptive Business Practices Act.

122. As a direct and proximate result of Tempus AI's violations of 815 Ill. Comp. Stat. § 530/10(a), Plaintiff and the Illinois Subclass suffered damages, as described above.

123.    Plaintiff and the Illinois Subclass seek relief under 815 Ill. Comp. Stat. § 510/3 for the harm they suffered because of Tempus AI's willful violations of 815 Ill. Comp. Stat. § 530/10(a), including actual damages, equitable relief, costs, and attorneys' fees.

**COUNT III**
**Violation of the Illinois Uniform Deceptive Trade Practices Act**
**815 Ill. Comp. Stat. Ann. 510/2, *et seq.***
**(On behalf of Plaintiff Taglioli, the Nationwide Class, and the Illinois Subclass)**

124.    Illinois Plaintiff Taglioli ("Plaintiff" for purposes of this Count) restates and realleges the allegations set forth in ¶¶ 1-105 as if fully set forth herein.

125.    Tempus AI qualifies as a "person" under 815 Ill. Comp. Stat. § 510/1(5).

126.    Tempus AI engaged in deceptive trade practices in violation of 815 Ill. Comp. Stat. § 510/2(a), including:

    a.    Claiming that goods or services have characteristics that they lack;

    b.    Representing that goods or services are of a particular standard, quality, or grade if they are of another;

    c.    Advertising goods or services with no intent to sell them as advertised; and

    d.    Engaging in other conduct likely to cause confusion or misunderstanding.

127.    Tempus AI's deceptive trade practices include:

    a.    Failing to keep Plaintiff's and the Classes' Genetic Information confidential and secure despite explicit assurances to the contrary;

    b.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and the Classes' Genetic Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510/2(a) and HIPAA;

    c.    Misrepresenting its commitment to protect the privacy and confidentiality of Plaintiff's and Classes' Genetic Information;

    d.    Misrepresenting compliance with common law and statutory duties related to the security and privacy of Plaintiff's and the Classes' Genetic Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510/2(a);

    e.    Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and the Classes' Genetic Information; and

    f.    Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and the Classes' Genetic Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510/2(a).

128. Tempus AI's representations and omissions were significant because they likely misled Plaintiff and the Classes about the secure retention and storage of their Genetic Information and Defendant's duties to safeguard it from unauthorized disclosure and dissemination.

129. The unfair and deceptive practices and acts by Tempus AI, as described, were immoral, unethical, oppressive, and unscrupulous. These actions caused significant harm to Plaintiff and the Classes that they could not reasonably avoid; this harm outweighed any supposed benefits to consumers or competition.

130. As a direct and proximate result of Tempus AI's unfair, unlawful, and deceptive trade practices, Plaintiff and the Classes have suffered and will continue to suffer harm, including

ascertainable losses of money or property, and both monetary and non-monetary damages, such as the loss of the benefit of their bargain with Tempus AI, since they would not have paid Tempus AI for goods and services or would have paid less for such goods and services but for Tempus AI's violations alleged herein; and the loss of value of their Genetic Information.

131. Plaintiff and the Classes seek all monetary and non-monetary relief permitted by law, including injunctive relief and reasonable attorney's fees.

### COUNT IV
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 Ill. Comp. Stat. Ann. 510/1, *et seq.***
**(On behalf of Plaintiff Taglioli, the Nationwide Class, and the Illinois Subclass)**

132. Illinois Plaintiff Ariann Taglioli ("Plaintiff" for purposes of this Count) restates and realleges the allegations set forth in ¶¶ 1-105 as if fully set forth herein.

133. At all relevant times, Tempus AI represented to Plaintiff and the Classes, directly and/or through, among other things, its website and marketing, that Tempus AI would protect Plaintiff and the Classes' sensitive Genetic Information, would obtain appropriate consent before disclosing such information, and would limit disclosure to specified purposes and recipients.

134. Tempus AI engaged in trade or commerce within the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. (the "ICFA"), by marketing, selling, and administrating consumer-facing products and services, and by disclosing, disseminating, or transferring Genetic Information in connection with those products and services.

135. Plaintiff provided their genetic data to Tempus AI in connection with its consumer-facing services with the understanding and expectation—based on Tempus AI's representations—that any use or disclosure of such sensitive information would be subject to Plaintiff's and the Classes' informed, voluntary, and specific consent.

136. Contrary to the representations of Tempus AI and its subsidiary, Ambry, as well as Plaintiff's and the Classes' reasonable expectations, Tempus AI compelled the disclosure of Plaintiff's and the Classes' Genetic Information without obtaining their informed, voluntary, and specific consent, including by conditioning access to its genetic testing services on blanket- data-disclosure terms that were not clearly disclosed, were materially misleading, and did not constitute valid consent.

137. Tempus AI further disclosed Plaintiff's and the Classes' Genetic Information for purposes unrelated to providing services to Plaintiff and the Classes in connection with lucrative data sharing agreements entered into with third-party partners, all without obtaining the informed, voluntary, and specific consent of Plaintiff and the Classes.

138. Tempus AI's conduct included, but was not limited to: (a) affirmative misrepresentations regarding Genetic Information privacy, security, consent, and the scope and purposes of Genetic Information collection; (b) omissions of material facts necessary to make Tempus AI's statements not misleading, including the scope, recipients, and purposes of third-party data disclosures; and (c) deceptive and unfair practices designed to obscure, bypass, or negate meaningful consumer consent regarding the collection, use, and disclosure of Genetic Information.

139. Tempus AI, including its subsidiary Ambry, knew or should have known that its statements and omissions regarding consent, privacy protections, data use, and third-party data sharing were false, misleading, and likely to deceive reasonable consumers, including Plaintiff and the Classes.

140. Tempus AI's practices offend established public policy, are immoral, unethical, oppressive, and unscrupulous, and cause substantial injury to consumers that is not reasonably

avoidably by consumers and is not outweighed by countervailing benefits to consumers or competition.

141. Tempus AI's conduct as alleged constitutes deceptive acts and practices, unfair methods of competition, and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of 815 ILCS § 505/2.

142. Plaintiff and the Classes justifiably relied on Tempus AI's representations and omissions regarding consent and the handling of sensitive Genetic Information, including by providing genetic material and/or permitting the creation and storage of Genetic Information in connection with Tempus AI's services.

143. As a direct and proximate result of Tempus AI's violations of the ICFA, Plaintiff and the Classes suffered actual damages, including but not limited to: loss of control over highly sensitive Genetic Information; invasion of privacy; diminution of the value of their Genetic Information; deprivation of the benefit of the bargain; anxiety, distress, and other harms associated with unauthorized data disclosure; and the unjust enrichment of Tempus AI derived from the unlawful use and monetization of Plaintiff's and the Classes' Genetic Information.

144. Plaintiff and the Classes are entitled to all remedies available under the ICFA, including actual economic damages, injunctive and other equitable relief to enjoin Tempus AI's unlawful practices and to require the deletion, cessation of use, and/or return of Plaintiff's and the Classes' Genetic Information, punitive damages for willful or intentional violations, and reasonable attorneys' fees and costs, all in amounts to be determined at trial.

## COUNT V
### Violation of the California Confidentiality of Medical Information Act ("CMIA")
### Cal. Civ. Code §§ 56, *et seq.*
### (On behalf of Plaintiff Michele Pascoe and the California Subclass)

145. California Plaintiff Michele Pascoe ("Plaintiff" for purposes of this Count) restates and realleges the allegations set forth in ¶¶ 1-105 as if fully set forth herein.

146. At all relevant times, Tempus AI, through its California-based subsidiary Ambry, was a healthcare provider because it had the had the "purpose of maintaining medical information to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage his or her information, or for the diagnosis or treatment of the individual." Cal. Civ. Code § 56.06(a).

147. Tempus AI is a provider of healthcare within the meaning of Civil Code § 56.06(a) and maintains medical information as defined by Civil Code § 56.05.

148. Plaintiff and the California Subclass are patients of Tempus AI, as defined in Civil Code § 56.05(k).

149. Plaintiff and the California Subclass provided their personal medical information in the form of Genetic Information to Ambry, Defendant Tempus AI's subsidiary.

150. Tempus AI failed to maintain, preserve, and store Plaintiff's and the California Subclass's personal medical information in the form of their Genetic Information when it disclosed the Genetic Information without Plaintiff's and the California Subclass's express authorization.

151. Tempus AI's failure to maintain, preserve, and store medical information in a manner that preserves the confidentiality of the information was, at least, negligent and thus violates California Civil Code Sections 56.36(b) and 56.36(c).

152. Tempus AI is liable for violations of the CMIA in the amount of $1,000 per violation. *See id.* § 56.36(b)(1).

31

## COUNT VI
### Violation of the California Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### (On behalf of Plaintiff Michele Pascoe and the California Subclass)

153. California Plaintiff Michele Pascoe ("Plaintiff" for purposes of this Count) restates and realleges the allegations set forth in ¶¶ 1-105 as if fully set forth herein.

154. The California Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

155. Tempus AI's material misstatements and omissions concerning their use of Plaintiff's genetic data and their plan to transfer it harmed Plaintiff and the California Subclass.

156. Tempus AI's conduct, as alleged herein, violates the and the FAL. *See* Cal. Civ. Code §§ 1750, *et seq*; Cal. Bus. & Prof. Code §§ 17500, *et seq*.

157. Tempus AI's conduct is unfair because it violates public policy as stated in constitutional, statutory, and/or regulatory provisions, including, but not limited to, the FAL. *See* Cal. Bus. & Prof. Code §§ 17500, *et seq*.

158. Tempus AI had a duty to disclose their practices concerning the transfer and uses for Plaintiff's genetic data.

159. Plaintiff relied on Ambry Genetics' representations about data privacy and safety.

160. Had Plaintiff and the California Subclass known what they know today, they would not have used Ambry Genetics for their testing, would have opted out of their data being transferred to either Tempus AI or other third parties, or would have sought compensation for the commercial value of their genetic data.

161. As a result of Tempus AI's practices, Plaintiff and the California Subclass have lost out on the money they may have received consistent with the commercial value of their genetic data.

32

162. Tempus AI will continue to cause harm through these material misrepresentations and omissions without legal action.

163. Plaintiff and the California Subclass seek restitution, injunctive, and equitable relief, and any other relief the Court deems necessary and proper under the statute.

**COUNT VII**
**Violation of the California Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1700, *et seq.***
**(On behalf of Plaintiff Michele Pascoe and the California Subclass)**

164. California Plaintiff Michele Pascoe ("Plaintiff" for purposes of this Count) restates and realleges the allegations set forth in ¶¶ 1-105 as if fully set forth herein.

165. This cause of action is brought pursuant to the California Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750, et seq.

166. Contemporaneous with this filing and consistent with the requirements of the California CLRA, Plaintiff has provided Tempus AI with notice of Plaintiff's allegations, claims and demands.

167. To the extent the Court finds Plaintiff has not met the CLRA notice requirements, Plaintiff in the alternative seeks only injunctive relief pursuant to Cal. Civ. Code § 1782, subdivision (d), which provides that "[a]n action for injunctive relief brought under the specific provisions of Section 1770 may be commenced without compliance with subdivision (a)."

168. Plaintiff and the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

169. Plaintiff, the California Subclass, and Tempus AI have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

170. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Tempus AI was likely to deceive consumers.

171. Cal. Civ. Code § 1770(a)(5) prohibits one who is involved in a transaction from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."

172. Ambry, Tempus AI's California-based subsidiary, violated this provision by representing that it took appropriate measures to protect Plaintiff's and the California Subclass's Genetic Information. Additionally, Tempus AI improperly handled, stored, or protected either unencrypted or partially encrypted Genetic Information.

173. Plaintiff and the California Subclasses relied upon Ambry's representations and were induced to sign up for Ambry's services and provided their Genetic Information which contains value in order to obtain services from Ambry.

174. As a result, Plaintiff and the California Subclasses were induced to enter into a relationship with Temps AI and provide their Genetic Information.

175. As a result of engaging in such conduct, Tempus AI have violated Civil Code § 1770.

176. Pursuant to Civil Code § 1780(a)(2) and (a)(5), Plaintiff seek an order of this Court that includes, but is not limited to, an order enjoining Tempus AI from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

177. Plaintiff and the California Subclass suffered injuries caused by Ambry's misrepresentations regarding and Tempus AI's subsequent of Plaintiff's and the California

Subclass's Genetic Information, because they provided their Genetic Information believing that Ambry and Tempus AI would adequately protect it.

178. Plaintiff and the California Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

179. The unfair and deceptive acts and practices of Tempus AI, as described above, present a serious threat to Plaintiff and California Subclass Members.

180. Plaintiff seeks prospective injunctive relief in order to ensure that Plaintiff's and the California Subclass's sensitive Genetic Information is safeguarded and kept confidential, including but not limited to, ordering Tempus AI to cease all unauthorized disclosures of Plaintiff's and the California Subclass's Genetic Information.

181. Unless such Class-wide injunctive relief is issued, Plaintiff and the California Subclass remain at risk, and there is no other adequate remedy at law that would ensure that Plaintiff (and other consumers) can rely on Tempus AI's representations regarding its data security in the future.

182. Furthermore, in the alternative to all legal remedies sought herein, Plaintiff, on behalf of the California Subclass, seeks monetary relief including but not limited to restitution to Plaintiff and the California Subclass of money or property that Tempus AI may have acquired by means of Tempus AI's unlawful, and unfair business practices; restitutionary disgorgement of all profits accruing to Tempus AI because of Tempus AI's unlawful and unfair business practices; declaratory relief; and attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**COUNT VIII**
**Violation of the Florida Unfair and Deceptive Trade Practices Act ("FDUTPA")**
**Fla. Stat. §§ 501.201, *et seq.***
**(On behalf of Plaintiff O'Hara and the Florida Subclass)**

183.    Plaintiff O'Hara ("Plaintiff" for purposes of this Count) restates and realleges the allegations set forth in ¶¶ 1-105 as if fully set forth herein.

184.    Plaintiff brings this claim on her own behalf and on behalf of each member of the Florida Subclass.

185.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, *et seq.*, prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Fla. Stat. § 501.204.

186.    Plaintiff and the members of the Florida Subclass are each a "consumer" as defined in Fla. Stat. Ann. § 501.203.

187.    Tempus AI is a "person" as defined in Fla. Stat. Ann. § 504.203.

188.    Tempus AI engaged in "trade or commerce" affecting the people of Florida by advertising, offering for sale, selling or distributing goods and services in the State of Florida. Fla. Stat. Ann. § 501.203.

189.    Tempus AI engaged in unfair, unconscionable, unlawful, and/or deceptive acts and practices in conducting trade and commerce in violation of the FDUTPA by:

  a.    Representing that goods or services have characteristics that they do not have;

  b.    Representing that goods or services are of a particular standard, quality, or grade if they are of another;

  c.    Advertising goods or services with intent not to sell them as advertised;

d. Engaging in other conduct that creates a likelihood of confusion or misunderstanding; and

e. Failing to comply with common law and/or statutory duties pertaining to the privacy of Plaintiff's and Florida Subclass Members' Genetic Information.

190. These deceptive statements, misrepresentations, omissions, concealments and acts constitute violations of Fla. Stat. 7 501.204(1).

191. Tempus AI acted intentionally, knowingly, and maliciously to violate FDUTPA, and recklessly disregarded Plaintiff's and Florida Subclass Members' rights, because Tempus AI intentionally compelled the disclosure of Plaintiff's and the Florida Subclass's Genetic Information and further disclosed that Genetic Information to third parties without obtaining their consent.

192. The fact that Tempus AI disclosed Plaintiff's and Florida Subclass Members' Genetic Information was material to Plaintiff and Florida Subclass Members. This is a fact that reasonable consumers would consider important when choosing download, use, or purchase an application.

193. Plaintiff and Florida Subclass Members were deceived and/or could reasonably be expected to be deceived by Tempus AI's subsidiary Ambry's material misrepresentations and omissions regarding the disclosure of their sensitive Genetic Information.

194. Plaintiff's and the Florida Subclass' Genetic Information has tangible value. As a direct and proximate result of Tempus AI's unfair and deceptive acts and practices, Plaintiff's and Florida Subclass Members' data is in the possession of third parties who have used and will use such data for their commercial benefit.

37

195. As a direct and proximate result of Tempus AI's unfair, unconscionable, and deceptive acts and practices, Plaintiff and Florida Subclass Members have suffered and will continue to suffer injury, including, but not limited to: loss of privacy; unauthorized dissemination of their valuable data; damage to and diminution of the value of their personal information; the likelihood of future misuse of their data; and economic harm stemming from the exploitation of their data.

196. Plaintiff and Florida Subclass Members seek all monetary and non-monetary relief allowed by law, including actual damages, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT IX
**Violation of the Georgia Uniform Deceptive Trade Practices Act**
**Ga. Code Ann. §§ 10-1-370, *et seq.***
**(On behalf of Plaintiff Neumann and the Georgia Subclass)**

197. Plaintiff Neumann ("Plaintiff" for purposes of this Count) restates and realleges the allegations set forth in ¶¶ 1-105 as if fully set forth herein.

198. Plaintiff brings this claim on her own behalf and on behalf of each member of the Georgia Subclass described above.

199. Tempus AI, Plaintiff, and Georgia Subclass Members are "persons" within the meaning of § 10-1-371(5) of the Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA").

200. Tempus AI engaged in deceptive trade practices in the conduct of its business in violation of Ga. Code § 10-1-372(a), including:

    a. Representing that goods or services have characteristics that they do not have;

    b. Representing that goods or services are of a particular standard, quality, or grade if they are of another;

38

c. Advertising goods or services with intent not to sell them as advertised; and

d. Engaging in other conduct that creates a likelihood of confusion or misunderstanding.

201. Tempus AI engaged in unfair, unconscionable, unlawful, and/or deceptive acts and practices in conducting trade and commerce in violation of the Georgia UDTPA by:

a. Compelling the disclosure Plaintiff's and Georgia Subclass Members' Genetic Information, without obtaining their consent;

b. Disclosing Plaintiff's and Georgia Subclass Members' Genetic Information to third parties, without obtaining their consent;

c. Misrepresenting to Plaintiff and Georgia Subclass Members that it would never disclose their sensitive Genetic Information without first obtaining their express written consent; and

d. Failing to comply with common law and/or statutory duties pertaining to the privacy of Plaintiff's and Georgia Subclass Members' Genetic Information.

202. Tempus AI acted intentionally, knowingly, and maliciously to violate the Georgia UDTPA, and recklessly disregarded Plaintiff's and Georgia Subclass Members' rights, because Tempus AI intentionally compelled the disclosure of Plaintiff's and Georgia Subclass Members' Genetic Information and subsequently disclosed or sold it without obtaining their consent.

203. The fact that Tempus AI compelled the disclosure of and further disclosed Georgia Plaintiff's and Georgia Subclass Members' Genetic Information was material to Georgia Plaintiff and Georgia Subclass Members. This is a fact that reasonable consumers would consider important when choosing which applications to download.

39

204. Plaintiff and Georgia Subclass Members were deceived and/or could reasonably be expected to be deceived by Tempus AI's, and its subsidiary Ambry's, material misrepresentations and omissions regarding the confidentiality and privacy of their Genetic Information

205. In the course of its business, Tempus AI engaged in activities with a tendency or capacity to deceive. Tempus AI acquired Ambry and compelled Ambry to disclose Plaintiff's and the Georgia Subclass's Genetic Information despite Ambry's prior representations to the contrary, demonstrating that Tempus AI was aware that consumers would not consent to the collection and disclosure of their Genetic Information, thus necessitating Tempus AI's omissions and misrepresentations regarding its actions.

206. Plaintiff's and the Georgia Subclass' Genetic Information has tangible value. As a direct and proximate result of Tempus AI's unfair and deceptive acts and practices, Plaintiff's and Georgia Subclass Members' Genetic Information is in the possession of third parties who have used and will use such data for their commercial benefit.

207. As a direct and proximate result of Tempus AI's unfair, unconscionable, and deceptive acts and practices, Plaintiff and Georgia Subclass Members have suffered and will continue to suffer injury, including, but not limited to: loss of privacy; unauthorized dissemination of their valuable data; damage to and diminution of the value of their Genetic Information; the likelihood of future misuse of their data; and economic harm stemming from the exploitation of their data.

208. Plaintiff and Georgia Subclass Members seek all monetary and non-monetary relief allowed by law, including actual damages, injunctive relief, and reasonable attorneys' fees and costs

**COUNT X**
**Violation of the Michigan Consumer Protection Act**
**Mich. Comp. Laws Ann. § 445.901, *et seq.***
**(On behalf of Plaintiff Harkness and the Michigan Subclass)**

209. Michigan Plaintiff Harkness ("Plaintiff" for purposes of this Count) restates and realleges the allegations set forth in ¶¶ 1-105 as if fully set forth herein.

210. Tempus AI, Plaintiff, and Michigan Subclass members are "persons" as defined by Mich. Comp. Laws Ann. § 445.903(d).

211. Tempus AI advertised, offered, or sold goods or services in Michigan and engaged in trade or commerce directly or indirectly affecting the people of Michigan, as defined by Mich. Comp. Laws Ann. § 445.903(g).

212. Tempus AI engaged in unfair, unconscionable, and deceptive practices in the conduct of trade and commerce, in violation of Mich. Comp. Laws Ann. § 445.903(1), including:

   a. Representing that its goods and services have characteristics, uses, and benefits that they do not have, in violation of Mich. Comp. Laws Ann. § 445.903(1)(c);

   b. Representing that its goods and services are of a particular standard or quality if they are of another in violation of Mich. Comp. Laws Ann. § 445.903(1)(e);

   c. Making a representation or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is, in violation of Mich. Comp. Laws Ann. § 445.903(1)(bb); and

   d. Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive matter, in violation of Mich. Comp. Laws Ann. § 445.903(1)(cc).

213. Tempus AI's unfair, unconscionable, and deceptive practices included the following conduct:

41

a. Compelling the disclosure Plaintiff's and Georgia Subclass Members' Genetic Information, without obtaining their consent;

b. Disclosing Plaintiff's and Georgia Subclass Members' Genetic Information to third parties, without obtaining their consent;

c. Misrepresenting to Plaintiff and Georgia Subclass Members that it would never disclose their sensitive Genetic Information without first obtaining their express written consent; and

d. Failing to comply with common law and/or statutory duties pertaining to the privacy of Plaintiff's and Georgia Subclass Members' Genetic Information.

214. Tempus AI's representations and omissions were material because they were likely to deceive reasonable consumers.

215. Tempus AI intended to mislead Plaintiff and Michigan Subclass members and induce them to rely on its misrepresentations and omissions.

216. The fact that Tempus AI compelled the disclosure of and further disclosed Georgia Plaintiff's and Georgia Subclass Members' Genetic Information was material to Georgia Plaintiff and Georgia Subclass Members. This is a fact that reasonable consumers would consider important when choosing which applications to download.

217. Tempus AI acted intentionally, knowingly, and maliciously to violate Michigan's Consumer Protection Act, and recklessly disregarded Plaintiff's and Michigan Subclass members' rights because Tempus AI intentionally compelled the disclosure of and further disclosed to third parties Plaintiff's and Michigan Subclass Members' Genetic Information without obtaining their consent.

42

218. Tempus AI's unfair, unconscionable, and deceptive practices in the conduct of trade and commerce included entering into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, where the waiver was not clearly stated and the consumer did not specifically consent to it. Mich. Comp. Laws Ann. § 445.903(1)(t).

219. As a direct and proximate result of Tempus AI's unfair, unconscionable, and deceptive practices, Plaintiff and Michigan Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including, but not limited to: loss of privacy; unauthorized dissemination of their valuable data; damage to and diminution of the value of their Genetic Information; the likelihood of future misuse of their data; and economic harm stemming from the exploitation of their data.

220. Plaintiff's and the Michigan Subclass' data was exploited without informed consent. Accordingly, Plaintiff and the Michigan Subclass are entitled to part of Tempus AI's profits that were generated by their Genetic Information without informed consent.

221. Plaintiff and Michigan Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $250, disgorgement, injunctive relief, attorneys' fees and costs, and any other relief that is just and proper.

### COUNT XI
### Violation of the New York General Business Law § 349
### (On behalf of the Plaintiff Farrier and the New York Subclass)

222. Plaintiff Farrier ("Plaintiff" for purposes of this Count) restates and realleges the allegations set forth in ¶¶ 1-105 as if fully set forth herein.

223. New York General Business Law ("N.Y. Gen. Bus. Law") Section 349(a) declares that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state" are unlawful.

224. Plaintiff and the New York Subclass Members are "person[s]" within the meaning of N.Y. Gen. Bus. Law § 349(h).

225. Defendant Tempus AI is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law § 349(b).

226. Defendant Tempus AI is engaged in consumer-oriented conduct as described herein.

227. Tempus AI violated state laws to deceptively acquire Plaintiff's and the New York Subclass's Genetic Information against consumer expectations.

228. This consumer-oriented conduct is misleading, in addition to deceptive, because neither Ambry's nor Defendant Tempus AI's Terms of Service nor any of its Privacy Policies discloses the acquisition of Genetic Information in the manner alleged here.

229. Plaintiff and members of the New York Subclass had no way of knowing that Tempus AI's representations were false and misleading because they were not privy to Tempus AI's plans to acquire Ambry Genetics.

230. Plaintiff has suffered a privacy injury as a result of Tempus AI's conduct.

231. In other words, the conduct alleged herein constitutes "unlawful" deceptive acts and practices in violation of N.Y. Gen. Bus. Law § 349. As such, Plaintiff and the New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Tempus AI, enjoining it from transferring Plaintiff's and New York Subclass Members' Genetic Information without proper notice and/or consent. There is no adequate remedy at law. Tempus AI misleadingly, inaccurately, and deceptively acquired and disclosed Plaintiff's and New York Subclass Members' Genetic Information and is profiting from its possession.

44

232. Tempus AI had a duty to Plaintiff and New York Subclass Members to refrain from unfair and deceptive practices. Specifically, Tempus AI owed Plaintiff and New York Subclass Members a duty to disclose to them, in the proper manner, that Tempus AI acquired Ambry and its cache of Plaintiff's and New York Subclass Members' Genetic Information. Tempus AI also had an obligation to seek consent for the acquisition of Plaintiff's and New York Subclass Members' Genetic Information.

233. Tempus AI thus violated N.Y. Gen. Bus. Law § 349 through its unfair and deceptive acts that harmed Plaintiff and New York Subclass Members. Tempus AI knows or should have known that its conduct violated N.Y. Gen. Bus. Law § 349.

234. Tempus AI's unlawful acts and practices complained of herein affect the public interest.

235. As a result of Tempus AI unlawful deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, compensatory, treble, and punitive damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Tempus AI's unlawful conduct, interest, attorneys' fees and costs, and an order enjoining Tempus AI's deceptive and unfair conduct, and all other just and appropriate relief available under the statute.

## COUNT XII
### Violation of the New York General Business Law § 350
### (On behalf of the Plaintiff Farrier and the New York Subclass)

236. Plaintiff Farrier ("Plaintiff" for purposes of this Count) restates and realleges the allegations set forth in ¶¶ 1-105 as if fully set forth herein.

237. Plaintiff brings this claim on her own behalf and on behalf of each member of the New York Subclass described above.

238. Tempus AI engaged in advertising, including labeling, of goods and services that was misleading in a material respect in violation of New York General Business Law § 350-a(1).

844. Tempus AI's advertising was misleading in a material respect because Ambry, Tempus AI's subsidiary, falsely represented that its goods and services included privacy protections for consumers' Genetic Information and failed to disclose material facts regarding the collection, disclosure, and sale of such Genetic Information. Specifically, Tempus AI failed to disclose to Plaintiff and the New York Subclass that it was acquiring Ambry, as well as Ambry's cache of Plaintiff's and the New York Subclass's Genetic Information and subsequently selling that Genetic Information to third parties for profit.

239. The omission of these material facts rendered Tempus AI's representations misleading in light of the advertised nature of their goods and services. Plaintiff and New York Subclass Members reasonably believed, based on Tempus AI's and Ambry's advertising, that their data would not be collected or sold without their knowledge and consent.

240. Tempus AI knowingly and intentionally engaged in false advertising with the intent to induce New York Plaintiff and New York Subclass Members to use its goods and services, relying on the misleading representations and omissions regarding privacy protections for data.

241. As a direct and proximate result of Tempus AI's false advertising, Plaintiff and New York Subclass Members were injured in that they purchased services under false pretenses and suffered a loss of privacy and control over their Genetic Information, which has tangible value. Plaintiff and New York Subclass Members would not have purchased Tempus AI's goods and services had the true facts been disclosed.

242. Plaintiff seeks all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of five hundred dollars per violation, whichever is greater, treble damages for willful or knowing violations, injunctive relief, reasonable attorneys' fees, costs, pre-judgment interest, and any other relief the Court deems just and proper.

**COUNT XIII**
**Violation of the West Virginia Consumer Credit and Protection Act ("CCPA")**
**W. Va. Code Ann. §46A-1-101, *et seq.***
**(On behalf of Plaintiff Terrano and the West Virginia Subclass)**

243.    Plaintiff Terrano ("Plaintiff" for purposes of this Count) restates and realleges the allegations set forth in ¶¶ 1-105 as if fully set forth herein.

244.    This cause of action is brought on behalf of the West Virginia Subclass against Tempus AI.

245.    Contemporaneous with this filing and consistent with the requirements of the West Virginia CCPA, Plaintiff has provided Tempus AI with notice of Plaintiff's allegations, claims and demands.

246.    Tempus AI, Plaintiff, and the West Virginia Subclass members are "[p]erson[s]" within the meaning of W. Va. Code Ann. §46A-1-102(31).

247.    Plaintiff and the West Virginia Subclass members are "[c]onsumer[s]" within the meaning of W. Va. Code Ann. §§46A-1-102(12) and 46A-6-102(2).

248.    The genetic tests obtained by Plaintiff and the West Virginia Subclass members are "[g]oods" within the meaning of W. Va. Code Ann. §46A-1-102(21).

249.    Tempus AI was and is engaged in "[t]rade" or "commerce" within the meaning of W. Va. Code Ann. §46A-6-102(6).

250.    The West Virginia Consumer Credit and Protection Act ("West Virginia CCPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts of practices in the conduct of any trade or commerce." W. Va. Code Ann. §46A-6-104.

251.    The West Virginia CCPA makes unlawful specific acts, including:

47

a.  "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (W. Va. Code Ann. §46A-6-102(7)(E));

b.  "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (W. Va. Code Ann. §46A-6-102(7)(G));

c.  "[a]dvertising goods or services with intent not to sell them as advertised" (W. Va. Code Ann. §46A-6-102(7)(I));

d.  "[e]ngaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding" (W. Va. Code Ann. §46A-6-102(7)(L)); and

e.  "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby" (W. Va. Code Ann. §46A-6-102(7)(M)).

252.    In the course of their business, Tempus AI, directly or its subsidiary, Ambry, violated the West Virginia CCPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the security and confidentiality its genetic tests.

253.    Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the security and confidentiality of Plaintiff's and the West Virginia Subclass members' Genetic Information, as detailed above, Tempus AI engaged

in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the West Virginia CCPA, including:

a. representing that the privacy and confidentiality of its genetic tests have characteristics, uses, benefits, and qualities which they do not have;

b. representing that the privacy and confidentiality of its genetic are of a particular standard, quality, and grade when they are not;

c. advertising its genetic with the intent not to sell them as advertised; and

d. engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

254. Tempus AI's misrepresentations and omissions regarding the privacy and confidentiality of its genetic were disseminated to Plaintiff and the West Virginia Subclass members in a uniform manner.

255. Tempus AI's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the West Virginia Subclass members, about the purported security, confidentiality, and privacy of Genetic Information derived from its genetic tests.

256. The facts regarding the purported security, confidentiality, and privacy of Genetic Information derived from its genetic tests that Tempus AI knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the West Virginia Subclass members, who consider such facts to be important to their purchase decisions.

49

257. Plaintiff and West Virginia Subclass members had no way of discerning that Tempus AI's or Ambry's representations were false and misleading, or otherwise learning the facts that Tempus AI had concealed or failed to disclose. Plaintiff and West Virginia Subclass members did not, and could not, unravel Tempus AI's deception on their own.

258. Tempus AI had an ongoing duty to Plaintiff and West Virginia Subclass members to refrain from unfair and deceptive practices under the West Virginia CCPA in the course of its business. Specifically, Tempus AI owed Plaintiff and West Virginia Subclass members a duty to disclose all the material facts regarding its genetic tests, including the lack of security, confidentiality, and privacy of Genetic Information derived from its genetic tests, because Tempus AI possessed exclusive knowledge, it intentionally concealed the facts regarding its genetic tests, including that including the lack of security, confidentiality, and privacy of Genetic Information derived from its genetic tests purpose from Plaintiff and the West Virginia Subclass members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

259. Plaintiff and the West Virginia Subclass members were aggrieved by Tempus AI's violations of the West Virginia CCPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Tempus AI's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its genetic tests, including the lack of security, confidentiality, and privacy of Genetic Information derived from its genetic tests. Specifically, Plaintiff and the West Virginia Subclass members purchased genetic tests in reliance on Tempus AI's subsidiary Ambry's misrepresentations, omissions, concealments, and failures to disclose material facts regarding the genetic tests. Had Tempus AI not engaged in the deceptive acts and practices alleged herein, Plaintiff and West Virginia Subclass members

50

would not have purchased the genetic tests, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

260. Tempus AI's violations present a continuing risk to Plaintiff and the West Virginia Subclass members, as well as to the general public. Tempus AI's unlawful acts and practices complained of herein affect the public interest.

261. As a result of Tempus AI's violations of the West Virginia CCPA, as alleged herein, Plaintiff and the West Virginia Subclass members seek an order enjoining Tempus AI's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the West Virginia CCPA.

## COUNT XIV
### Negligence
### (On behalf of all Plaintiffs and the Nationwide Class)

262. Plaintiffs restate and reallege the allegations set forth in ¶¶ 1-105 as if fully set forth herein.

263. In exchange for receiving Ambry's genetic testing services, Plaintiffs were required to provide Ambry with their sensitive Genetic Information.

264. Plaintiff and Class Members entrusted their Genetic Information to Ambry with the understanding that Ambry would safeguard it.

265. Tempus AI had full knowledge of the sensitivity of Plaintiffs' and Class Members' Genetic Information at the time it acquired and compelled Ambry to disclose it.

266. Tempus AI knew, or should have known, that it must obtain the express written consent of Plaintiffs and Class Members before causing the transfer of their sensitive Genetic Information.

267. Tempus AI, as well as its subsidiary Ambry, had a duty to exercise reasonable care in safeguarding, securing and protecting Plaintiffs' and Class Members' Genetic Information from

51

being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, obtaining the express written consent of Plaintiffs and Class Members before causing their Genetic Information to be transferred to Defendant Tempus AI.

268. Tempus AI's own conduct created a foreseeable risk of harm to Plaintiffs and Class Members. Tempus AI's misconduct included, but was not limited to, its failure to obtain the express written consent of Plaintiffs and Class Members prior to (1) compelling Ambry to disclose it as part of its acquisition of Ambry, and (2) disclosing it to third-party partners as part of a series of data sharing agreements.

269. Plaintiffs and Class Members had no ability to protect their Genetic Information that was in the possession of Tempus AI and its subsidiary, Ambry.

270. Tempus AI had a duty to put proper procedures in place to prevent the unauthorized dissemination of Plaintiffs' and Class Members' Genetic Information.

271. Tempus AI improperly and inadequately safeguarded Plaintiffs' and Class Members' Genetic Information in deviation of standard industry rules, regulations, practices, and various state statutes at the time of the Data Breach.

272. Tempus AI, including its subsidiary Ambry, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to obtain their express written consent before compelling Ambry to transfer their sensitive Genetic Information.

273. Tempus AI, through its actions and/or omissions, further unlawfully breached its duty to Plaintiffs and Class Members by failing to obtain their express written consent before disclosing their sensitive Genetic Information as part of data agreements it made with third-party partners.

274. But for Tempus AI's wrongful and negligent breach of duties owed to Plaintiffs and Class Members, Plaintiffs' and Class Members' Genetic Information would not have been unlawfully disclosed, compromised, and monetized by Tempus AI.

275. There is a temporal and close causal connection between Tempus AI's failure to secure and safeguard Plaintiffs' and Class Members' Genetic Information and the harm, or risk of imminent harm, suffered by Plaintiffs and Class Members as a result of the unauthorized disclosure and subsequent monetization of their Genetic Information.

276. As a result of Tempus AI's negligence, unauthorized parties, including Tempus AI and its third-party partners, have acquired Plaintiffs' and Class Members' Genetic Information and will or have monetized that information. As a further result of Tempus AI's negligence, Plaintiffs and Class Members have suffered and will continue to suffer damages and injury including, but not limited to, (a) an increased risk of identity theft, fraud, and/or misuse of their Genetic Information; (b) the loss of the opportunity of how their Genetic Information is used; (c) the compromise, publication, and/or theft of their Genetic Information; (d) diminished value of their Genetic Information; (e) the continued risk to their Genetic Information, which remains in Tempus AI's possession and is subject to further unauthorized disclosures so long as Tempus AI fails to comply with its duty and applicable law; and (f) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Genetic Information compromised as a result of Tempus AI's acquisition of Ambry and its subsequent data sharing agreements with its third-party partners.

277. Violations of statutes which establish a duty to take precautions to protect a particular class of persons from a particular injury or type of injury may constitute negligence per se.

53

278. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Tempus AI, of failing to obtain written consent before disclosing Plaintiffs' and Class Members' Genetic Information. The FTC publications and orders described above also form part of the basis of Tempus AI's duty in this regard.

279. Tempus AI violated Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiffs' and Class Members' Genetic Information and not complying with applicable industry standards, as described in detail herein. Tempus AI's conduct was particularly unreasonable given the nature and amount of Genetic Information it obtained and stored.

280. Tempus AI's violation of Section 5 of the FTC Act constitutes negligence *per se*.

281. Plaintiffs and Class Members are within the class of persons that the FTC Act was intended to protect.

282. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and Class Members.

283. Defendants' violation of HIPAA also independently constitutes negligence *per se.*

284. HIPAA privacy laws were enacted with the objective of protecting the confidentiality of patients' healthcare information, including Genetic Information, and set forth the conditions under which such information can be used, and to whom it can be disclosed. HIPAA privacy laws not only apply to healthcare providers and the organizations they work for, but to any entity that may have access to healthcare information about a patient that—if it were to fall into the wrong hands—could present a risk of harm to the patient's finances or reputation.

285. Plaintiffs and Class Members are within the class of persons that HIPAA privacy laws were intended to protect.

286. The harm that occurred as a result of Tempus AI's disclosure of the Genetic Information is the type of harm HIPAA privacy laws were intended to guard against.

287. As a direct and proximate result of Tempus AI's negligence per se, Plaintiffs and the Class have suffered, and continue to suffer, injuries and damages including, but not limited to an increased risk of identity theft, fraud, and/or misuse of their Genetic Information.

288. Additionally, as a direct and proximate result of Tempus AI's negligence per se, Plaintiffs and Class Members have suffered and will suffer the continued risks of exposure of their Genetic Information, which remains in Tempus AI's possession and is subject to further unauthorized disclosures so long as Tempus AI fails to comply with its duty to Plaintiffs and Class Members as well as applicable law.

## COUNT XV
### Unjust Enrichment
### (On behalf of all Plaintiffs and the Nationwide Class)

289. Plaintiffs restate and reallege the allegations set forth in ¶¶ 1-105 as if fully set forth herein.

290. Plaintiffs and Class members unknowingly conferred benefits on Tempus AI's by engaging the services of Ambry, whose data was later illegally obtained by Tempus AI as part of its acquisition of Ambry. Tempus AI paid $600 million to acquire Ambry and its cache of Genetic Information, including that of Plaintiffs and Class Members, demonstrating the substantial commercial value of this data. Defendant then monetized this Genetic Information by licensing it to third-party partners companies in agreements worth hundreds of millions of dollars.

291. Plaintiffs and Class members suffered a detriment while Tempus AI benefited because they paid for the processing and secure handling of their private Genetic Information, which was not kept confidential.

292. Tempus AI has been unjustly enriched by acquiring and retaining valuable genetic data from Plaintiffs' purchases of genetic tests and related services from Ambry. Tempus AI achieved record revenues from this data by signing agreements with over 70 pharmaceutical and biotechnology clients in 2025, as previously mentioned, while Plaintiffs and the Class received nothing. Retaining these benefits, including profits, would be unjust and inequitable since they were obtained in violation of state laws and through consumer deception.

293. Given that Tempus AI's retention of the benefits conferred by Plaintiffs and other class members is unjust and inequitable, it must provide restitution to Plaintiffs and all class members for unjust enrichment, as ordered by the Court.

## COUNT XVI
**Fraudulent Concealment**
**(On behalf of all Plaintiffs and the Nationwide Class)**

294. Plaintiffs restate and reallege the allegations set forth in ¶¶ 1-105 as if fully set forth herein.

295. Despite knowing about the acquisition of Ambry well before it was finalized, Tempus AI hid from Ambry's consumers both: (i) the fact that the acquisition was forthcoming; and (ii) the significant consequences of the acquisition, namely that Tempus AI would gain access to Plaintiffs' genetic and health data.

296. Tempus AI was obligated to disclose these facts and obtain Plaintiffs' and Class members' consent as required by state law.

297. Tempus AI's concealment misled Plaintiffs and the Class, causing privacy harm.

298.    Had Tempus AI not fraudulently hidden its plans, Plaintiffs and the Class could have opted out of Tempus AI acquiring their genetic and health data and/or chosen to be compensated for their contributions to Tempus AI's monetization of their information.

299.    Plaintiffs and Class Members seek all legal and equitable relief available, including injunctive relief, other equitable remedies, compensatory, actual, punitive, and treble damages, restitution, and attorneys' fees, filing fees, and costs.

## COUNT XVII
### Conversion
### (On behalf of all Plaintiffs and the Nationwide Class)

300.    Plaintiffs restate and reallege the allegations set forth in ¶¶ 1-105 as if fully set forth herein.

301.    Defendant wrongfully exercised control over Plaintiffs' property interests in their Genetic Information.

302.    Plaintiffs and Class Members purchased genetic testing from Ambry, Defendant Tempus AI's subsidiary. As part of this transaction, Ambry retained Plaintiffs' and Class Members' Genetic Information.

303.    As part of its acquisition of Ambry, Tempus AI compelled the unlawful and unauthorized disclosure of Plaintiffs' and Class Members' Genetic Information.

304.    Subsequent to its unlawful acquisition of Plaintiffs' and Class Members' Genetic Information, Tempus AI entered into various data sharing agreements with third-party partners for a cumulative total of $1.1 billion, as discussed *infra*.

305.    By compelling the unlawful and unauthorized disclosure of Plaintiffs' and Class Members' Genetic Information for profit, Tempus AI converted their Genetic Information for its own use and profit.

306. By unlawfully disclosing Plaintiffs' and Class Members' Genetic Information without their express authorization to third-party partners as part of various data sharing agreements, Tempus AI further converted the Genetic Information for its own profit.

307. Plaintiffs and Class Members did not consent to Tempus AI compelling the disclosure of their Genetic Information, nor did they consent to Tempus AI further disclosing that Genetic Information to its third-party partners for profit.

308. As a result of Tempus AI's conversion, Plaintiffs and Class Members have lost the value of their Genetic Information and have suffered damages.

309. Plaintiffs and Class Members seek an award of compensatory and punitive damages against Tempus AI, whose conduct evidences a willful, wanton, and reckless disregard for the rights of Plaintiffs and Class Members.

**COUNT XVIII**
**Invasion of Privacy – Intrusion Upon Seclusion**
**(On behalf of all Plaintiffs and the Nationwide Class)**

310. Plaintiffs restate and reallege the allegations set forth in ¶¶ 1-105 as if fully set forth herein.

311. Plaintiff and Class Members have reasonable expectations of privacy in their Genetic Information.

312. Defendant intentionally intruded on and into Plaintiff's and Class Members' solitude, seclusion, or private affairs by intentionally misusing their Genetic Information without permission, as alleged in more detail above. In short, as part of its acquisition of Ambry, Defendant compelled Ambry to disclose its enormous database of Genetic Information, including that of Plaintiffs and Class Members, without their knowledge or written consent Defendant now maintains possession of Plaintiffs' and Class Members' Genetic Information and has incorporated it into its own data sets.

313. Defendant further intruded upon Plaintiffs' and Class Members' private affairs by exploiting their Genetic Information for commercial gain without consent. Following the acquisition, Defendant leveraged the dataset—including Plaintiffs' Genetic Information—to augment its offerings and commercial activities to secure agreements exceeding $1.1 billion in total contract value.

314. Defendant's conduct was intentional and systematic, undertaken to advance its AI and data businesses and to drive revenue growth.

315. These intrusions are highly offensive to a reasonable person. Genetic data is inherently unique, immutable, and predictive of present and future health conditions, and its exposure creates acute and continuing risks to privacy and discrimination.

316. Plaintiffs and Class Members did not consent to Defendant's misuse of their Genetic Information.

317. As a direct and proximate result of Defendant's intrusion, Plaintiffs and Class Members suffered substantial and serious privacy harms, including loss of seclusion and autonomy over their Genetic Information and the ongoing risk of further dissemination and misuse.

318. Defendant's intrusion into Plaintiffs' and Class Members' private affairs was without lawful justification or privilege and would be highly offensive to a reasonable person.

319. Plaintiffs and Class Members seek appropriate relief for intrusion upon seclusion, including damages, disgorgement, and injunctive relief to prevent further acquisition, use, or disclosure of their Genetic Information without consent, in amounts and forms to be determined at trial.

**COUNT XIX**
**Breach of Contract**
**(On behalf of all Plaintiffs and the Nationwide Class)**

320.     Plaintiffs restate and reallege the allegations set forth in ¶¶ 1-105 as if fully set forth herein.

321.     Plaintiffs and Class Members entered into valid and enforceable express contracts with Tempus AI under which Plaintiffs and Class Members agreed to provide their Genetic Information to Tempus AI, including its subsidiary Ambry, and Tempus AI agreed to provide genetic testing for monetary compensation and, impliedly if not explicitly, agreed to protect Plaintiffs' and other Class Members' Genetic Information.

322.     These contracts include, but are not limited to, test requisition forms, patient signature cards, HIPAA authorization forms, and patient consent forms.

323.     To the extent Tempus AI's obligation to protect Plaintiffs' and Class Members' Genetic Information was not explicit in those express contracts, the express contracts included implied terms requiring Tempus AI to implement data security adequate to safeguard and protect the confidentiality of Plaintiffs' and Class Members' Genetic Information, including in accordance with HIPAA regulations; federal, state and local laws; and industry standards. No Plaintiff would have entered into these contracts with Tempus AI without understanding that Plaintiffs' and Class Members' Genetic Information would be safeguarded and protected; stated otherwise, data security was an essential implied term of the parties' express contracts.

324.     A meeting of the minds occurred, as Plaintiffs and Class Members agreed, among other things, to provide their Genetic Information, allow Tempus AI to conduct genetic testing for monetary benefit, in exchange for Tempus AI's agreement to protect the confidentiality of that Genetic Information.

60

325. Both the provision of genetic testing and the protection of Plaintiffs' and Class Members' Genetic Information were material aspects of Plaintiffs' and Class Members' contracts with Tempus AI.

326. Tempus AI's promises and representations described above relating to HIPAA, CMIA, and industry practices, and about Defendants' purported concern about their patients' privacy rights became terms of the contracts between Defendants and their patients, including Plaintiffs and other Class Members. Defendants breached these promises by failing to comply with HIPAA, CMIA, and reasonable industry practices.

327. Plaintiffs and Class Members read, reviewed, and/or relied on statements made by or provided by Tempus AI, including its subsidiary Ambry, and/or otherwise understood that Tempus AI would protect its patients' Genetic Information.

328. Plaintiffs and Class Members fully performed their obligations under the contract with Tempus AI; however, Tempus AI did not.

329. As a result of Tempus AI's breach of these terms, Plaintiffs and Class Members have suffered a variety of damages including but not limited to: the lost value of their privacy; the loss of the benefit of their bargain with Tempus AI; the loss in the difference in the value of the secure health services Tempus AI promised and the insecure services received; and Plaintiffs and Class Members have been put at increased risk of future identity theft, fraud, and/or misuse of their Genetic Information, which will remain for their respective lifetimes.

330. Plaintiffs and Class Members are therefore entitled to damages, including restitution and unjust enrichment, disgorgement, declaratory and injunctive relief, and attorney fees, costs, and expenses.

**COUNT XX**
**Breach of Implied Contract**
**(On behalf of all Plaintiffs and the Nationwide Class, in the Alternative to Count XIX)**

331.    Plaintiffs restate and reallege the allegations set forth in ¶¶ 1-105 as if fully set forth herein.

332.    Plaintiffs and Class Members were required to provide their Genetic Information to Tempus AI as a condition of their use of Tempus AI's genetic testing services.  By providing their Genetic Information, and upon Tempus AI's acceptance of such information, Plaintiffs and Class Members, on one hand, and Tempus AI, on the other hand, entered into implied-in-fact contracts for the provision of data security, separate and apart from any express contracts concerning genetic testing or other services to be provided by Tempus AI to Plaintiffs.

333.    These implied-in-fact contracts obligated Tempus AI to take reasonable steps to secure and safeguard Plaintiffs' and other Class Members' Genetic Information. The terms of these implied contracts are further described in the federal laws, state laws, and industry standards alleged above, and Tempus AI, including its subsidiary Ambry, expressly assented to these terms in its Notice of Privacy Practices.[28]

334.    Plaintiffs and Class Members paid money, or money was paid on their behalf, to Tempus AI in exchange for services, along with Tempus AI's promise to protect their Genetic Information from unauthorized disclosure.

335.    In their written privacy policies, Tempus AI's subsidiary Ambry expressly promised Plaintiffs and Class Members that it would only disclose Private Information under certain circumstances, none of which relate to the Tempus AI's acquisition of Ambry's cache of Genetic Information or Tempus AI's subsequent data sharing agreements.

---

[28] *See Notice of Privacy Practices*, AMBRY GENETICS CORP., https://www.ambrygen.com/legal/notice-of-privacy-practices (last visited Apr. 15, 2026); *Notice of Privacy Practices*, TEMPUS, https://www.tempus.com/notice-of-privacy-practices/ (last visited Apr. 15, 2026).

336. Tempus AI, including its subsidiary Ambry, promised to comply with HIPAA standards and to make sure that Plaintiffs' and Class Members' Private Information would remain protected.

337. Implicit in the agreement between Plaintiffs and Class Members and Tempus AI to provide Genetic Information was Tempus AI's obligation to (a) use such Genetic Information for business purposes only; (b) take reasonable steps to safeguard that Genetic Information; (c) prevent unauthorized disclosures of the Genetic Information; (d) reasonably safeguard and protect the Genetic Information of Plaintiffs and Class Members from unauthorized disclosure or uses; and (f) retain the Genetic Information only under conditions that kept such information secure and confidential.

338. Without such implied contracts, Plaintiffs and Class Members would not have provided their Genetic Information to Tempus AI.

339. Plaintiffs and Class Members fully performed their obligations under the implied contract with Tempus AI; however, Tempus AI did not.

340. Tempus AI, including its subsidiary Ambry, breached the implied contracts with Plaintiffs and Class Members by failing to conduct the following:

   a. reasonably safeguard and protect Plaintiffs' and Class Members' Genetic Information, which was compromised as a result of the Tempus AI's acquisition of Ambry and Tempus AI's subsequent data sharing agreements with third parties;

   b. comply with its promise to abide by HIPAA; and

   c. ensure the confidentiality and integrity of electronic protected health information, including Genetic Information, that Tempus AI created, received, maintained, and transmitted in violation of 45 C.F.R 164.306(a)(1).

341. As a direct and proximate result of Tempus AI's breach of the implied contracts, Plaintiffs and Class Members have suffered a variety of damages including but not limited to: the lost value of their privacy; the loss of the benefit of their bargain with Tempus AI; the loss of the difference in the value of the secure health services Tempus AI promised and the insecure services received; and Plaintiffs and other Class Members have been put at an increased risk of identity theft, fraud, and/or misuse of their Genetic Information, which will remain for the rest of their lives..

**COUNT XXI**
**Breach of Fiduciary Duty**
**(On behalf of all Plaintiffs and the Nationwide Class)**

342. Plaintiffs restate and reallege the allegations set forth in ¶¶ 1-105 as if fully set forth herein.

343. In light of their special relationship, Tempus AI, including its subsidiary Ambry, has become the guardian of Plaintiffs' and Class Members' Genetic Information. Tempus AI has become a fiduciary, created by its undertaking and guardianship of patients' Genetic Information, to act primarily for the benefit of its patients, including Plaintiffs and Class Members. This duty included the obligation to safeguard Plaintiffs' and Class Members' Genetic Information and to obtain their express written consent prior to disclosing it to third parties.

344. Tempus AI has a fiduciary duty to act for the benefit of Plaintiffs and Class Members upon matters within the scope of its relationship. Tempus AI breached its fiduciary duties owed to Plaintiffs and Class Members by failing to conduct the following:

    a. obtain the express written consent of Plaintiffs and Class Members prior to compelling the disclosure and dissemination of their Genetic Information as part of Tempus AI's acquisition of Ambry;

64

b. obtain the express written consent of Plaintiffs and Class Members prior to disclosing and disseminating their Genetic Information as part of lucrative data sharing agreements Tempus AI entered into with third-party partners;

c. ensure the confidentiality and integrity of electronic protected health information Tempus AI created, received, maintained, and transmitted, in violation of 45 C.F.R 164.306(a)(1);

d. protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, including Genetic Information, in violation of 45 C.F.R 164.306(a)(3);

e. prevent the improper use and disclosure of protected health information, including Genetic Information, that is and remains accessible to unauthorized persons and entities in violation of 45 C.F.R 164.502, *et seq.*;

f. otherwise failing to safeguard Plaintiffs' and Class Members' Genetic Information from unauthorized disclosure and dissemination.

345. As a direct and proximate result of Tempus AI's breaches of its fiduciary duties, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to (a) an increased risk of identity theft, fraud, and/or misuse of their Genetic Information; (b) the loss of the opportunity of how their Genetic Information is used; (c) the compromise, publication, and/or theft of their Genetic Information; (d) the continued risk to their Genetic Information, which remains in Tempus AI's possession and is subject to further unauthorized disclosures so long as Tempus AI continues to fail to comply with common law, state consumer protection statutes, and its own promises and agreements; and (e) future costs in terms of time, effort, and money that will

be expended to prevent, detect, contest, and repair the impact of the Genetic Information compromised for the remainder of the lives of Plaintiffs and Class Members.

346.    As a direct and proximate result of Tempus AI's breach of its fiduciary duty, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

## VI.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all members of the Classes, request judgment against Tempus AI as follows:

A.  For an Order certifying the Class as defined herein, and appointing Plaintiffs as class representatives;

B.  For permanent injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein;

C.  For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

D.  For an award of actual damages and compensatory damages, in an amount to be determined;

E.  For an award of pre-judgment and post-judgment interest as allowed by law;

F.  For an award of costs of suit and attorneys' fees, as allowable by law; and

G.  Such other and further relief as this court may deem just and proper.

## VII.    JURY TRIAL DEMANDED

Plaintiffs demand a jury trial on all issues so triable.

Dated: April 15, 2026                                Respectfully submitted,

/s/ *Brian J. Devall*
Brian J. Devall (ARDC No. 6352915)
bdevall@ahdootwolfson.com

**AHDOOT & WOLFSON, P.C**
201 King of Prussia Road, Suite 650
Radnor, Pennsylvania 19087
T: (310) 474-9111

Tina Wolfson*
Theodore Maya*
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
**AHDOOT & WOLFSON, P.C.**
2600 W. Olive Avenue, Suite 500
Burbank, California 91505
Tel: (310) 474-9111

*Attorneys for Plaintiffs and the Proposed
Classes*

*\*pro hac vice forthcoming*